LONG

*v.*

DEVIER.

(*Supreme Court of Appeals of Virginia, Sept. 20, 1874.*)

**Equity Practice—State Claims—Proof of Must Be Satisfactory.**

After a great lapse of time a claim, of a balance due upon certain bonds, should be established by clear and satisfactory proof and when not so established a court of equity ought not to render a decree for the claim.

Appeal from circuit court of Rockingham county.

In 1853, Samuel Long purchased a tract of land from Giles Devier and Ewing Devier for which he paid a portion of the purchase money in cash and executed bonds for the balance.

In 1872 Long filed his bill in the circuit court of Rockingham county setting out the above facts, claiming full payment and asking for a production of the bonds alleged to have been lost by Devier.

Devier in his answer denies full payment and claims a balance due him of $400.00 or $500.00, but gives no satisfactory evidence of the time of the indebtedness.

See opinion for further essential facts.

The cause was referred to a commissioner, upon whose report the court decreed in favor of Devier from which decree Long appealed and the appellate court reversed the decree.

*Harnsberger*, counsel for appellant.

*John E. Roller*, counsel for appellee.

CHRISTIAN, J., delivered the opinion of the court.

The court is of opinion that the evidence reported by Commissioner Dangerfield, is of too vague and uncertain a character upon which to found a decree for any certain amount against the appellant, if indeed it proves any indebtedness from him to the appellees.

The decree of 29th of August, 1872, directs said commissioner to ascertain how much if anything is yet due upon the bond in the bill and proceedings mentioned, as executed by the complainant to defendant.    In response to this decree the commissioner says: "Your commissioner finds the state of proof in the case very unsatisfactory.    The defendant, Giles Devier in his deposition claims that there was due him in April, 1861, at the time that he, Devier, executed a trust deed for the benefit of his creditors, from $400.00 to $500.00.    This is claimed in the answer and the deposition of Devier.    Dr. A. M. Newman testifies to admissions of indebtedness by Long, but cannot speak definitely as to amount, *has an impression, but not definite,* that $200.00 was admitted.    The complainant denies all indebtedness, and claims to have fully paid.    The exact date at which Devier fixed the indebtedness at from $400.00 to $500.00 is not given, but in the month of April, 1861, when the Rockingham militia were at Harper's Ferry.    If the court can decree upon the evidence before it at all, your commissioner would suggest the state of the case most nearly proven, to be $400.00, due by the complainant to the defendants as of the 30th of April, 1861."

The evidence returned by the commissioner fully and more than justifies the opinion of the commissioner that the proof is very unsatisfactory, and the court after a very careful review of the testimony returned by him, not only concur with the commissioner that it is doubtful whether any decree can be rendered upon this evidence, but is of the decided opinion

that Devier, the appellee, has failed to establish any claim against the appellant for which he is entitled to a decree.

After the great lapse of time (the transaction out of which this claim originated, having occurred in 1853, more than twenty years ago), and after the failure of Devier to assert his claim for nearly ten years after the courts were opened to him, after the close of the war, his claim ought to be established by clear and satisfactory proof.

We are bound to say upon the record before us that it has not been so established. But on the contrary, that upon the facts in the cause, the appellee has failed to establish his demand that there was due to him $400.00 or $500.00. Now Devier's own statement of his claim in his sworn answer is very confused and wholly uncertain. He says, "Your respondent is sure of one thing, that the said complainant, Samuel E. Long is indebted to him in a very considerable sum upon one of the bonds, either upon that of 1858, or that of 1859, or it may be possible upon the bond of 1856, though he thinks that has .been paid, nor can your respondent now fix the amount. Your respondent, at the breaking out of the war, held one of these bonds, either the bond due in 1858, or that due in 1859, or perhaps that in 1856, though respondent thinks it was that of 1859. It has become lost or mislaid and your respondent has no date in his possession from which he could speak accurately." He does not know and does not pretend to say what amount is due to him or whether it was due on the bond falling due in 1856, in 1858, or in 1859. He says that bond, whichever it is, has become lost or mislaid and that he has no data in his possession from which he can speak accurately. Now according to his own statement, which bond has become lost or mislaid? Was it the bond of 1856? or the bond of 1858? or the bond of 1859? But if either, which has been fully paid and which not? *What amount* is due, and on what bond is it due? He says he has

no data in his possession from which he could speak accurately. If he has not, who has? The conjectural balance decreed by the court is on the bond of 1858. It is conceded on all sides that the *bond of 1859, was fully paid.* If that be so the inference is very strong that the bond of 1858, was also paid. In the ordinary course of business payments made by Long would have been first credited on the bond of 1858, before that of 1859.

But there is another significant fact in this case. Many of the payments made by Long were made to Bryan, an attorney. If Bryan were living, he no doubt could give explanations concerning them. This claim is asserted after the death of Bryan, and after the lapse of more than twenty years after the origin of the transaction.

The party who asserts it is uncertain upon which bond it arises and claims *no specific amount.*

Upon this state of facts we are bound to say that the evidence is of too vague and uncertain a character upon which to found a decree.

The court is therefore of opinion that the decree of the circuit court should be reversed.